## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FOUNDERS INSURANCE COMPANY, an Illinois corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>TRACKS BREWING CO. dba TRACKS BREWING COMPANY, a Utah corporation; DANIEL ANTHONY CERRONI; KRISELLE WILKINSON; RYAN BOWEN; GARY LYLE APPLEGATE; DAVID APPLEGATE; and HONEY RAE APPLEGATE,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF FOUNDERS INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Civil No. 2:13-cv-00986-DN<br><br>Judge David Nuffer |

Plaintiff Founders Insurance Company filed a Complaint for Declaratory Judgment asserting it had no coverage for defense or indemnity under a policy of insurance it had issued to defendants Tracks Brewing Co. dba Tracks Brewing Company, Gary Applegate, Dayne Applegate and Honey Rae Applegate ("Insureds") for claims for assault and battery arising out of a lawsuit brought against the Insureds by Anthony Cerroni and Kriselle Wilkinson in Utah state court.  For the reasons set forth below, the Court grants, in its entirety, Founders' Motion for Judgment on the Pleadings ("Motion").[1]

---

[1] Motion for Judgment on the Pleadings and Memorandum in Support, docket no. 14, filed March 27, 2014.

## BACKGROUND

In the late evening hours of September 16, 2009, while in the men's restroom at Tracks Brewing Company, Anthony Cerroni had an unfortunate encounter with two gentlemen: Ryan Bowen and Randall K. Hunt, in which Cerroni sustained injuries. Cerroni and his significant other, Kriselle Wilkinson, later filed a civil lawsuit in the Third Judicial District Court for the State of Utah (hereinafter "Underlying Lawsuit").[2]

The Insureds tendered the defense of the Underlying Lawsuit to Founders. Founders evaluated the potential for coverage, issued a denial of coverage letter and filed this declaratory judgment action. Upon the filing of Answers by all defendants, Founders filed a Motion for Judgment on the Pleadings.

## STANDARD OF REVIEW – MOTIONS FOR JUDGMENT ON THE PLEADINGS

A judgment on the pleadings should only be granted to Founders if it has clearly established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.[3] In considering a motion for judgment on the pleadings, this Court should accept all facts pleaded by the non-moving parties as true and should grant all reasonable inferences from the pleadings in favor of them.[4] Further, similarly to this Circuit's existing practice for motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

---

[2] *Daniel Anthony Cerroni & Kriselle Wilkinson v. Ryan Bowen, Randall K. Hunt, Tracks Brewing Company, Gary Lyle Applegate, David Applegate & Honey Rae Applegate,* Civil No. 130301496, Third Judicial District Court, Tooele County, State of Utah.

[3] *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d at 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 Fed.Appx. 750, 753 (10th Cir. 2013).

[4] *Park Univ.*, 442 F.3d at 1244.

"documents attached to the pleadings are exhibits and are to be considered in [the District Court's decision on a] Rule 12(c) motion."[5]

"Although a moving party, for purposes of the Rule 12(c) motion, concedes the accuracy of the factual allegations in his adversary's pleading, he does not admit all other assertions in the opposing party's pleading that constitute conclusions of law, legally impossible facts, or matters that would not be admissible in evidence at trial."[6]  Further, while this Court will not grant a Rule 12(c) motion if a material issue of fact exists, "federal judges have been firm in requiring that the issues be genuine and not based on mere *pro forma* denials . . . ."[7]

## THE UNDERLYING LAWSUIT

Cerroni and Wilkinson allege in their state court action that Hunt and Bowen had been to multiple establishments on the evening of September 16, 2009 and had consumed large quantities of alcohol prior to arriving at Tracks at about 10:00 p.m. that evening.[8]  Both men continued to consume alcohol after arriving at Tracks.[9]

Cerroni and Wilkinson contend that in September 2009, Bowen was employed by Tracks as a member of its security staff and that Bowen's actions on the night in question "indicate that he was acting in the course of his employment at the time of the altercation."[10]

Cerroni and Wilkinson, however, also allege alternatively that Tracks had previously and permanently banned Bowen from the premises for multiple violent fights, including one where

---

[5] *Id.*  The Underlying Lawsuit and the Founders policy were attached as exhibits to the Complaint for Declaratory Relief.

[6] 5C Charles Alan Wright et al., *Federal Practice & Procedure*, § 1368 (3d ed. 2014) (footnotes omitted).

[7] *Id.*

[8] State Complaint at ¶ 12. The State Court Complaint ("State Complaint") is attached as Exhibit 2 to the Motion, docket no. 14-1, filed March 17, 2014.

[9] *Id.* at ¶ 13.

[10] *Id.* at ¶¶ 15-16.

he threw a patron into and/or through a wall on the premises.[11]  According to the Underlying

Lawsuit, on the evening of the altercation, Cerroni entered Tracks and proceeded directly to the

restroom where Bowen and Hunt confronted him and severely beat him.[12]  Cerroni and

Wilkinson also allege in the Underlying Lawsuit that prior to and subsequent to the assault of

September 16, 2009 both Hunt and Bowen followed and harassed both plaintiffs in an attempt to

cause them distress.[13]  As a result of the distress Cerroni and Wilkinson suffered, they allege that

the manifestation of the distress included, but was not limited to:  (a) problems with using public

restrooms; (b) Wilkinson's miscarriage of April 2012;[14] (c) depression; (d) anxiety; (e) necessity

of counseling through employment for depression and anxiety; (c) [sic] significant decline in

health.[15]

**THE CONTRACT OF INSURANCE**

Founders issued to Tracks a liquor liability insurance policy with a one million dollar per

occurrence limit.  This Contract of Insurance bore policy No. LLUT000091, with a policy period

from June 30, 2009 to June 30, 2010.[16]  The Insuring Agreement in the Policy states that

Founders will pay those sums that the insured becomes legally obligated to pay as damages

because of "injury" to which the insurance applies, "if liability for such 'injury' is imposed on an

'insured' by reason of the selling, serving, or furnishing of any alcoholic beverage; . . . ."[17]  The

---

[11]  *Id.* at ¶ 17.

[12]  *Id.* at ¶¶ 23-26.

[13]  *Id.* at ¶ 31.

[14]  There are no specific allegations in the Underlying Lawsuit that explain or describe how Wilkinson's miscarriage of April 2012 was caused by the action of any of the defendants.

[15]  *Id.* at ¶ 34.

[16]  Policy, at "Declaration Page." A copy of Founders' Contract of Insurance ("Policy") is attached as Exhibit 1 to Founders' Complaint for Declaratory Relief, docket no. 2-1, filed October 28, 2013.

[17]  Policy, at 1.

4

Insuring Agreement also provides that Founders will defend an "insured" against any "suit" seeking those damages.[18]

The Insuring Agreement further provides that Founders has "no duty to defend an 'insured' against any 'suit' seeking damages for 'injury' to which this insurance does not apply."[19]

The Insuring Agreement specifically states:

> Subject to <u>Exclusions to Coverage</u> (paragraph 2 below), this insurance applies to "injury" only if the "injury" occurs as a direct result of an "insured" selling, serving, or furnishing alcoholic beverages on the "insured premises" during the policy period.[20]

The Contract of Insurance contains an Exclusions section.  This section provides, in pertinent part:

> This insurance does not apply to:
>
> a.  Expected or Intended Injury
> "Injury" expected or intended from the standpoint of an "insured."  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
>                  * * *
>
> e.  Other Acts
> "Injury" caused directly or indirectly by any act of an "insured," an "employee" of an "insured," or anyone acting on behalf of an "insured" other than the selling, serving or furnishing of any alcoholic beverage.
>
>                  * * *
>
> h.  Punitive or Exemplary Damages
> Sums awarded as . . . punitive damages . . . in whatever form assessed against an "insured" or an "insured's" indemnitees.

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

* * *

k.  Assault and/or Battery
"Injury" arising from:

(1) Assault and/or battery committed by any "insured", any "employee" of an "insured", or any other person;

(2) The failure to suppress or prevent assault and/or battery by any person in subparagraph k.(1) above;

(3) The selling, serving or furnishing of alcoholic beverages which results in an assault and/or battery; or

(4) The negligent:

(a) Employment;
(b) Investigation;
(c) Supervision;
(d) Reporting to the proper authorities, or failure to so report; or
(e) Retention
of or by a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by subparagraphs k.(1) through k.(3) above.[21]

## ANALYSIS

### Utah Insurance Law

Where the allegations in a complaint, if proved, show there is no potential liability under the Contract of Insurance, there is no duty to defend.[22] "The question of whether there is potential liability under the policy 'is determined by comparing the language of the insurance policy with the allegations of the complaint.'"[23]

---

[21] *Id.* at 1-2

[22] *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 7, 297 P.3d 578 (Utah 2013).

[23] *Id.* (quoting *Benjamin v. AMICA Mut. Ins. Co.*, 2006 UT 37, ¶ 16, 140 P.3d 1210 (Utah 2006)).  *See also Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1171-72 (10th Cir. 2010) (analyzing duty to defend under Utah law).

In Utah, "[i]nsurance policies are contracts between the insurer and the insured and must be analyzed according to principles of contract interpretation under Utah law."[24]  Utah courts "afford the policy terms their usually accepted meanings and give effect to and harmonize to the extent possible all policy provisions."[25]

<u>The Assault and/or Battery Exclusion in the Policy</u>

In analyzing the application of the assault and/or battery exclusion to the claims brought by Cerroni and Wilkinson, four factors are important:

> 1.  The exclusion provides that coverage under the Policy does not apply to any Injury arising from assault and/or battery committed by any insured, any employee of an insured, or any other person.
>
> 2.  The exclusion bars coverage for assault and/or battery for injury arising from the failure to suppress or prevent assault and/or battery by any of the three categories of persons listed above (i.e. any insured, any employee of an insured, or any other person).
>
> 3.  The exclusion bars coverage for injuries arising from the selling, serving, or furnishing of alcoholic beverages which results in an assault and/or battery.
>
> 4.  The exclusion bars coverage for injury arising from the negligent employment, investigation, supervision, reporting to the proper authorities, or retention of or by a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1-3 above.

As noted, the assault and battery exclusion in the Policy is an "arising from" exclusion. Courts have interpreted the phrase "arising from" or "resulting from" to mean the same as "arising out of."[26] Utah courts have specifically provided a framework for interpreting the phrase "arising out of" as used in liability insurance contracts.  The most recent statement of this

---

[24]  <u>*Ohio Cas. Ins. Co. v. Unigard Ins. Co.,* 268 P.3d 180, 184 (Utah 2012)</u>.

[25]  <u>*Id.*</u>  (alterations and internal quotation marks omitted).

[26]  *See, e.g.*, <u>American States Ins. Co. v. Bailey,</u> 133 F.3d 363, 370, n.7 (5th Cir. 1998) (applying Texas law: interpreting phrase "arising from" to mean the same as "arising out of" in exclusion and holding it to mean "originating from, having its origin in, growing out of or flowing from").

jurisprudence is found in *Meadow Valley Contractors, Inc. v. Transcontinental Ins. Co.*[27]  In that

case, a general contractor for highway construction brought an action against the subcontractor

and its commercial general liability insurer to recover indemnity for liability arising out of

flooding in connection with said contractor's drainage box.  The coverage issue turned on the

meaning of the phrase, "arising out of" and the court addressed the issue as follows:

> Both parties in this case argue that the policy language is
> unambiguous, and we agree.  Hence, we resort only to the ordinary
> meaning of the phrase "arising out of" to interpret the policy
> provision.  Established Utah law provides:
>
>> "[T]he term 'arising out of' is ordinarily understood
>> to mean originating from, incident to, or in
>> connection with the item in question."
>>
>> " . . . As used in a liability insurance policy, the
>> words 'arising out of' are very broad, general and
>> comprehensive.  They are commonly understood to
>> mean originating from, growing out of or flowing
>> from, and require only that there be some causal
>> relationship between injury and the risk for which
>> coverage is provided."[28]

The Utah Court of Appeals went on to state that "while some nexus must exist between

the flood damage" and the subcontractor's project, the phrase "'arising out of' does not require

that [the subcontractor] cause the damage."[29]  Thus, in Utah, the phrase "arising out of" is

equated with origination, growth or flow from the event, and has much broader significance than

"caused by."[30]

The District Court, in an unpublished decision, has previously found the assault and

battery exclusion to be unambiguous and applied it to a claim that the insured's security guard

---

[27]  2001 UT App 190, 27 P.3d 594 (Utah Ct. App. 2001).

[28]  27 P.3d at 597 (quoting *Viking Ins. Co. of Wis. v. Coleman*, 927 P.2d 661, 663 (Utah Ct. App. 1996), *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978)).

[29]  27 P.3d at 597.

[30]  *Id.*

had assaulted a patron.[31]  Numerous other courts have consistently found the assault and battery

exclusion to be unambiguous and applied it to bar coverage in a variety of situations.[32]

The allegations in the Underlying Lawsuit are that Bowen and an acquaintance of his

named Randall Hunt went into the bathroom of Tracks and pummeled Mr. Cerroni, including

punching him in the chest even though Bowen and Hunt were aware that Cerroni had previously

undergone heart surgery.[33]  Any injuries arising from Bowen's conduct on September 16, 2009 –

whether he was acting as an employee of Tracks or not – find no coverage under the Founders

policy because of the assault and/or battery exclusion.  It does not matter if the actions of the

defendants that caused injury to Cerroni and Wilkinson were the result of intentional behavior or

negligent behavior.  The exclusion applies equally to both.

Further, it does not matter that Bowen disputes he was the instigator of the fight, i.e.,

Bowen claims that Cerroni attacked him.  The exclusion applies to the fight regardless of

whether it was started by an alleged employee of Tracks or whether the fight was initiated "by

any other person."

There are, however, allegations in the Underlying Lawsuit in which plaintiffs allege that

prior to and subsequent to the September 16, 2009 assault, both Bowen and his acquaintance,

Mr. Hunt, followed and harassed Cerroni and Wilkinson "in an attempt to cause distress."[34]

Those claims, which on their face do not "arise from" the selling, serving or furnishing of

---

[31]  *See* *Essex Ins. Co. v. Wake Up Too, Inc.*, No. 2:07CV312 DAK, 2009 WL 357987, *7-8 (D. Utah Feb. 12, 2009) (unpublished).

[32]  *See* *Omega USA Ins. v. D&S Indy, Inc.*, No. 1:11–cv–00355–JMS–TAB, 2012 WL 3614040, *6 (S.D. Ind. Aug. 21, 2012) (applying exclusion to attack on patrons as they were leaving bar) (unpublished); *Mt. Vernon Fire Ins. Co. v. Creative Housing, Ltd.*, 93 F.3d 63, 66 (2d Cir. 1996) (applying exclusion to attack on tenants at apartment complex); *Kamaki Skiathos v. Essex Ins. Co.*, 396 F. Supp. 2d 624 (D.Md. 2005) (applying exclusion to forcible ejection of patrons from bar); *Capitol Indem. Corp. v. Blazer*, 51 F.Supp.2d 1080, 1086-88 (D.Nev. 1999) (applying exclusion to assault and battery by fellow patrons); *Byrd v. Linton*, 117 So.3d 1268, 1271-72 (La. Ct. App. 2012) (applying exclusion to battery by fellow customers).

[33]  State Complaint at ¶¶ 10-11, 26-27.

[34]  State Complaint at ¶31.

alcoholic beverages, would not be subject to the exclusionary provisions of the assault and/or battery exclusion.

<u>Analysis of the Harassment Claims</u>

The Policy at issue in this case is a Liquor Liability policy, not a commercial general liability policy.[35]  The Insuring Agreement provides that Founders will pay those sums that Tracks becomes legally obligated to pay as damages if liability for such "injury" is imposed on an insured under the Founders policy "by reason of the selling, serving, or furnishing of any alcoholic beverage . . . ."[36]  In other words, if a claim for injury were to arise out of some activity unrelated to the selling, serving or furnishing of an alcoholic beverage, e.g., harassment, such a claim for injury has no coverage.

In addition, the Policy contains the "Other Acts" exclusion which provides that the insurance does not apply to "injury" that is caused directly or indirectly by any act of an insured, an employee of an insured, or anyone acting on behalf of an insured "other than the selling, serving or furnishing of any alcoholic beverage."[37]  Although the Underlying Lawsuit makes vague allegations of harassment, both before and after the September 16, 2009 assault, those allegations are not based on any acts by Tracks or its officers or employees involving the furnishing or sale of alcoholic beverages.  There is no coverage under the Policy for the harassment claims made by Cerroni and Wilkinson against the defendants in the Underlying Lawsuit.[38]

---

[35]  Policy, at 1.

[36]  *Id.*

[37]  *Id.* at 2.

[38]  Cerroni and Wilkinson in the Underlying Lawsuit have alleged punitive damages against all defendants.  The Policy contains a punitive damages exclusion which provides that the insurance does not apply to sums awarded as

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff Founders' Motion

for Judgment on the Pleadings[39] is GRANTED and judgment is hereby entered in favor of

Founders Insurance Company on all claims and causes of action.


The Clerk shall close the case.


Dated March 20, 2015.

BY THE COURT:

David Nuffer
United States District Judge

G:\EDSI\DOCS\18289\0003\11O3184.DOC

---

"punitive damages, exemplary damages, . . . or any damages resulting from the multiplication of compensatory damages in whatever form assessed against an 'insured' or an 'insured's' indemnitees." Policy, at 2.

Further, Utah Code Ann. § 31A-20-101(4) provides that no insurer may insure or attempt to insure against punitive damages.  There is no coverage for any punitive damage claim made by Cerroni and Wilkinson against any of the defendants in the Underlying Lawsuit.

[39] Motion for Judgment on the Pleadings and Memorandum in Support, docket no. 14, filed March 17, 2014.

11